ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **JORGE BRIONES TORRES Y/O WALKIRIA CARDY-BRIONES**<br>QUERELLANTE(S)-RECURRIDA(S)<br><br><br>V.<br><br><br>**BERNARDO VEGA SMITH H/N/C PT INTERIORS; GIL FLORES; CARIBE GLASS, LLC; JW ALUMINUM CONSTRUCTION, INC.**<br>QUERELLADA(S)-RECURRENTE(S) | **KLRA202500113** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Civil Núm.:<br>**SAN-2023-0013044**<br><br>Sobre:<br>Ley Núm. 5 de 23 de abril de 1973 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de marzo de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **BERNARDO VEGA SMITH H/N/C PT INTERIORS** (señor **VEGA SMITH**) mediante una *Solicitud de Revisión Judicial* interpuesta el 20 de febrero de 2025. En su recurso, nos solicita que revisemos la *Resolución* decretada el 26 de septiembre de 2024 por el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACo)**.[1] Mediante esta decisión administrativa, se declaró ha lugar la *Querella* presentada el 23 de noviembre de 2022 por los señores **JORGE BRIONES TORRES** y **WALKIRIA CARDY-BRIONES** (señores **BRIONES-CARDY**) contra el señor **VEGA SMITH**. Además, se le impuso satisfacer las siguientes cantidades: (i) $8,763.30 (estimado provisto por el señor **EDGARDO AMADOR ACEVEDO**, técnico de investigación del **DACo**); (ii) $2,000.00 por concepto de daños y perjuicios; y (iii) $1,500.00 por honorarios de abogado.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 18 de diciembre de 2024. Apéndice de *Recurso de Revisión Judicial,* págs. 142- 153.

Número Identificador:
SEN2025_____

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El día 15 de noviembre de 2020, los señores **BRIONES-CARDY** y **VEGA SMITH** suscribieron un contrato de arrendamiento de obras intitulado "*Construction Contract*".[2] Transcurrido algún tiempo, en o alrededor del 9 de marzo de 2021, se paralizaron las obras con el propósito de permitir la intervención de otros contratistas quienes realizaron trabajos de demolición, instalación de puertas, ventanas y "*railings*", entre otras cosas. La obra del señor **VEGA SMITH** se reanudó para el 8 de junio de 2021.[3] Al regresar al inmueble, el señor **VEGA SMITH** se percató de que sus trabajos efectuados hasta ese momento habían sufridos daños, deterioro y/o destrucción por causas ajenas a sus actos y voluntad.

Después, el 23 de noviembre de 2022, los señores **BRIONES-CARDY** incoaron *Querella* ante el **DACo**.[4] En su reclamación, peticionaron que se ordenara: (i) culminar los trabajos y/o modificaciones y/o reparaciones necesarias; (ii) pagar una suma no menor de $22,500.00 para sufragar los costos de la contratación de un nuevo contratista; (iii) satisfacer una compensación de $20,000.00 por daños y angustias mentales; y (iv) costear los gastos y honorarios de abogados.

Más tarde, el 14 de marzo de 2023, el señor **VEGA SMITH** presentó su *Contestación a Querella y Querella Contra Tercero* para incluir como tercero a la ARQUITECTA MALINOW.[5] Adujo que la ARQUITECTA MALINOW supervisó y dirigió las labores de remodelación y diseño de interiores; las obras ejecutadas habían sido inspeccionadas y aceptadas por la ARQUITECTA

---

[2] En dicho contrato, se acordó que la obra a realizarse es una remodelación en el apartamento 11-G ubicado en el Condominio Reef Tower en el municipio de Carolina. Apéndice del *Recurso de Revisión*, págs. 26- 33.

[3] Entre diciembre de 2020 y junio de 2021, el señor **VEGA SMITH** había emitido alrededor de quince (15) certificaciones y facturas. Todos los trabajos realizados hasta ese momento fueron inspeccionados y aprobados por la ARQUITECTA INGE MALINOW (ARQUITECTA MALINOW), previo a la emisión del pago por parte de los señores **BRIONES-CARDY**.

[4] Apéndice del *Recurso de Revisión*, págs. 1- 10. El 16 de junio de 2023, se presentó *Querella Enmendada*. Apéndice del *Recurso de Revisión*, págs. 18- 99.

[5] *Íd.*, págs. 11- 17.

MALINOW; y había recibido pago por la obra completada. Además, expuso que la ARQUITECTA MALINOW tenía la obligación y deber de supervisar a los otros contratistas.

El 30 de mayo de 2023, se rindió el *Informe de Inspección Construcción* por el señor EDGARDO AMADOR ACEVEDO, técnico de investigación del **DACo**.[6] En su *Informe de Inspección Construcción*, el señor AMADOR ACEVEDO expresó que "[s]e recomienda la intervención del personal adicional por trabajos y modificaciones para completar la obra en distintas reparaciones realizado por el segundo turno dentro del apto. 11 G".

Subsiguientemente, el 23 de agosto de 2023, **DACo** dictó una *Resolución Interlocutoria* declarando no ha lugar la *Querella Contra Tercero*.[7] Ello amparado en que el Reglamento de Procedimientos Administrativos Núm. 8034 sólo provee para la radicación de querellas por parte de querellantes. El 26 de septiembre de 2023, se efectuó una segunda inspección por el señor AMADOR ACEVEDO.[8] En este *Informe de Inspección Construcción* se reseñó que: "[l]uego, la entrada de un segundo turno, que se alega de haber trabajado con los materiales solo para instalación asegurando que no tienen nada que ver por daños ya provisto en la propiedad según alegaciones de: [c]ontratista puerta principal y puertas de cuarto. Contratista de gabinetes de cocina. Contratista puerta de salida al balcón sliding door[.] [A]legando que al momento de la instalación el piso y paredes ya estaba como se encontró y que no surgieron daños mayores".

Así las cosas, el 3 de noviembre de 2023, el señor **VEGA SMITH** presentó *Solicitud de Acumulación de Parte* para incluir a la ARQUITECTA MALINOW como parte indispensable.[9] Arguyó que su testimonio sería sumamente importante a la hora de considerar el remedio.

---

[6] Apéndice del *Recurso de Revisión*, págs. 100- 104.
[7] *Íd.*, pág. 105.
[8] *Íd.*, págs. 106- 110.
[9] *Íd.*, págs. 111- 113.

Los días 18 y 19 de enero de 2024, se celebraron audiencias administrativas a las cuales comparecieron las partes. Luego del desfile de prueba testifical y documental, los señores **BRIONES-CARDY** desistieron de la *Querella* en contra de **JW ALUMINUM**; el foro administrativo declaró no ha lugar la solicitud de acumulación de parte indispensable; y se pautó audiencia para el 18 de abril de 2024.[10]

Finalmente, el 26 de septiembre de 2024, **DACo** dictó la *Resolución* impugnada.[11] Empero, el 27 de noviembre de 2024, el señor **VEGA SMITH** presentó *Moción Solicitado Relevo de Resolución y Orden* en la cual interpeló una nueva notificación de la *Resolución*.[12] El 18 de diciembre de 2024, se dictaminó *Resolución Interlocutoria* declarando no ha lugar el petitorio del señor **VEGA SMITH** y ordenando la notificación de la *Resolución* archivada en autos el 27 de septiembre de 2024.[13] En desacuerdo, el 7 de enero de 2025, el señor **VEGA SMITH** presentó una *Moción de Reconsideración*.[14] Razonó que pese a que el **DACo** reconoció que hubo intervención de múltiples contratistas en la obra, descartó toda probabilidad de que las acciones de alguno o todos estos haya ocasionado alguno o todos los defectos reclamados en la *Querella Enmendada.* En la misma fecha, mediante correo electrónico, el **DACo** enunció "[s]e ha registrado una moción en el sistema. ...[...]...[l]a moción presentada estará siendo evaluada por el personal designado de DACo próximamente".[15]

Inconforme, el 20 de febrero de 2025, el señor **VEGA SMITH** recurrió ante este Tribunal de Apelaciones mediante una *Solicitud de Revisión Judicial.* En su escrito, señala el(los) siguiente(s) error(es):

> Erró el DACo al declarar ha lugar la Querella y no tomar en cuenta lo dispuesto en el Artículo 1483 del Código Civil de 1930 sobre la responsabilidad del contratista de un edificio arruinado por vicios de construcción.

---

[10] Apéndice del *Recurso de Revisión*, págs. 115- 116.
[11] *Íd.*, págs. 117- 126.
[12] *Íd.*, págs. 127- 136.
[13] Apéndice del *Recurso de Revisión*, págs. 138- 141.
[14] *Íd.*, págs. 154- 165.
[15] *Íd.*, págs. 166- 167.

Erró el DACo al obviar prueba de inspecciones y certificaciones por un perito afín con la parte recurrida y la subsiguiente aceptación y pagos emitidos por etapas en la obra.

Erró el DACo al concluir que el recurrente fue responsable de los daños reclamados en la Querella, toda vez que el Informe del Inspector de la Agencia no le atribuye responsabilidad alguna a este.

Erró el DACo al imponer el pago de honorarios de abogado al recurrente en ausencia de conducta constitutiva de temeridad.

Erró el DACo al no acumular a la Arquitecta Igne Malinow como parte indispensable.

El 5 de marzo de 2025, los señores **BRIONES-CARDY** presentaron su *Alegato en Oposición a Solicitud de Revisión Judicial.*

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- **II** -

La *jurisdicción* es el poder o autoridad que tiene un tribunal para considerar y decidir los casos y controversias.[16] En consecuencia, la falta de *jurisdicción* de un tribunal incide directamente sobre su poder para adjudicar una polémica.[17] Es por ello, que los tribunales deben ser celosos guardianes de su *jurisdicción* dado que los asuntos relacionados con esta son privilegiados y deben atenderse con prioridad.[18]

Aun en ausencia de un señalamiento por alguna de las partes, la falta de *jurisdicción* puede ser considerada *motu proprio* por los tribunales. Por tratarse de una cuestión de umbral en todo procedimiento judicial, si un tribunal determina que carece de *jurisdicción* solo resta así declararlo y desestimar la reclamación inmediatamente, sin entrar en los méritos de la

---

[16] *Municipio de Aguada v. W. Construction, LLC y otro,* 2024 TSPR 69; *FCPR v. ELA et al.,* 211 DPR 521 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 394 (2022).
[17] *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 385 (2020).
[18] *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 267- 268 (2018).

controversia, conforme lo ordenado por las leyes y reglamentos para el perfeccionamiento del recurso en cuestión.[19]

La ausencia de *jurisdicción*, por tanto, acarrea las siguientes consecuencias: priva a un foro judicial del poder necesario para adjudicar una controversia; los tribunales no poseen discreción para asumirla cuando no la tienen; no es susceptible de ser subsanada; las partes no pueden conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; se impone a los tribunales el ineludible deber de auscultar su propia *jurisdicción* —y a los tribunales apelativos la obligación de examinar la *jurisdicción* del foro de donde procede el recurso—; las cuestiones jurisdiccionales deben ser resueltas con preferencia sobre otros asuntos, y su alegación puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*.[20]

Un recurso presentado antes del tiempo correspondiente (prematuro), al igual que el presentado luego del plazo aplicable (tardío), *"sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre"*.[21] En ambos casos, su presentación carece de eficacia y no produce ningún efecto jurídico.[22]

La Regla 83 (C) del Reglamento del Tribunal de Apelaciones faculta a este Tribunal para que, a iniciativa propia, desestime un recurso de apelación o deniegue un auto discrecional por cualquiera de los motivos consignados en el inciso (B).[23] Una vez un tribunal determina que no tiene *jurisdicción*,

---

[19] *FCPR v. ELA et al., supra*; *Cobra Acquisitions v. Mun. Yabucoa et al., supra*; *Allied Mgmt. Group v. Oriental Bank, supra*, págs. 386- 387; *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 501 (2019).

[20] *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 395; *Allied Mgmt. Group v. Oriental Bank, supra*, págs. 386- 387; *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101-102 (2020).

[21] *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873 (2007).

[22] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *S.L.G. Szendrey-Ramos v. F. Castillo, supra*.

[23] Dicho inciso lee: *"(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes: (1) que el Tribunal de Apelaciones carece de jurisdicción; (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello; (3) que no se ha presentado o proseguido con diligencia o de buena fe; (4) que el recurso es frívolo y surge claramente que ha sido interpuesto para demorar los procedimientos; o (5) que el recurso se ha convertido en académico"*.

"*procede la inmediata desestimación del recurso apelativo conforme lo ordenado por las leyes y los reglamentos para el perfeccionamiento de estos recursos*".[24] Ello sin entrar en los méritos de la controversia ante sí.

### - III -

En este caso, el 7 de enero de 2025, el señor **VEGA SMITH** presentó una *Moción de Reconsideración.* Ese mismo día, mediante correo electrónico, la agencia administrativa pronunció: "[s]e ha registrado una moción en el sistema. ...[...]...[l]a moción presentada estará siendo evaluada por el personal designado de DACo próximamente".

En conformidad con el apercibimiento contenida en la *Resolución,* el señor **VEGA SMITH** tenía un plazo de veinte (20) días para presentar su *Moción de Reconsideración*; notificar a la otra parte; y acreditar a **DACo**. El **DACo** emitió su misiva exponiendo que dicha petición se estaría evaluando. Por lo que, debemos colegir que dicha agencia acogió la *Moción de Reconsideración*. Ello implica que su decisión o resolución deberá ser dictaminada y archivada en autos dentro de los noventa (90) días siguientes a la presentación de la *Moción de Reconsideración*. Transcurrido dicho plazo, la agencia perderá la jurisdicción sobre la solicitud y el termino para presentar revisión judicial comenzará a decursar nuevamente a partir de la expiración del plazo de noventa (90) días, salvo que el **DACo** por justa causa y previo al vencimiento de ese intervalo lo prorrogue por un período que no excederá de treinta (30) días adicionales.[25]

---

[24] *S.L.G. Szendrey-Ramos v. F. Castillo, supra.*

[25] La Regla 29 del *Reglamento de Procedimientos Adjudicativos* del **DACo** sobre Resolución y Revisión Judicial dispone: "29.1 La parte adversamente afectada por una resolución u orden parcial interlocutoria o final podrá solicitar Reconsideración. La solicitud de Reconsideración deberá ser presentada y recibida en el Departamento, además de notificada a la parte contraria, dentro del término jurisdiccional de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden. El promovente de la moción de reconsideración acreditará en el Departamento evidencia de haber notificado a la parte contraria, lo cual constituirá un requisito de cumplimiento estricto. El Departamento dentro de los quince (15) días de haberse presentado dicha solicitud podrá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión judicial comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su reconsideración, tendrá que completarse dentro de los noventa (90) días jurisdiccionales y el término para solicitar revisión judicial de treinta (30) días empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Si el Departamento luego de acoger una moción de reconsideración, dejare de tomar alguna

No existiendo la más mínima duda de que se ha acogido el petitorio mencionado, procede que el foro administrativo concrete su resolución. Ante esta situación, aún está pendiente el vencimiento del tiempo para la adjudicación de la *Moción de Reconsideración.* Como resultado, el plazo de treinta (30) días para recurrir del dictamen administrativo comenzará a transcurrir a partir de su notificación y archivo en autos.

Por consiguiente, no habiendo concluido el plazo de los noventa (90) días, la presentación de este recurso es prematura y nos priva de *jurisdicción* para atender la(s) controversia(s) planteada(s).[26] En consecuencia, procede la *desestimación* del presente recurso por falta de *jurisdicción*.

### - IV -

Por los fundamentos antes expuestos y en conformidad con la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, **desestimamos**, por falta de *jurisdicción*, la *Solicitud de Revisión Judicial* incoada el 20 de febrero de 2025 por el señor **VEGA SMITH**; y ordenamos el cierre y archivo del presente caso.[27]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

acción sobre ella dentro de los noventa (90) días de haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa, prorrogue el tiempo para resolver, por un periodo que no excederá de treinta (30) días.

[26] El plazo vence el 7 de abril de 2025.

[27] 4 LPRA Ap. XXII-B. La Regla 83 (C) del Reglamento del Tribunal de Apelaciones faculta a este Tribunal para que, a iniciativa propia, desestime un recurso de apelación o deniegue un auto discrecional por cualquiera de los motivos consignados en el inciso (B). Dicho inciso lee: *"(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes: (1) que el Tribunal de Apelaciones carece de jurisdicción; (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello; (3) que no se ha presentado o proseguido con diligencia o de buena fe; (4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos; o (5) que el recurso se ha convertido en académico"*.